IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 3, 2009

## JIMMY LEE TAYLOR, JR. v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 8218     Joseph H. Walker, III, Judge**

---

**No. W2008-01890-CCA-R3-PC  -  Filed October 21, 2009**

---

The petitioner, Jimmy Lee Taylor, Jr., appeals from the Lauderdale County Circuit Court's denial of post-conviction relief from his guilty pleas to aggravated rape, aggravated robbery, especially aggravated kidnapping, and especially aggravated burglary and his effective sentence of seventeen years at one hundred percent.  In his appeal, the petitioner argues that he received ineffective assistance of counsel because trial counsel failed to explain the consequences of his plea and because trial counsel did not spend adequate time meeting with him.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Scott A. Lovelace, Ripley, Tennessee, for the petitioner-appellant, Jimmy Lee Taylor, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Guilty Plea Hearing.**  At the guilty plea hearing, the State summarized the facts in the petitioner's case:

> Had this matter gone to trial the State would have shown on December 22, [2006], at approximately 6:34 P.M., Officer Temple was dispatched to 164 North Main Street, the Trends beauty salon, concerning an aggravated rape and an aggravated robbery complaint.
>
> Upon arrival he spoke with Ms. McLemore, who informed him that she had turned off the lights inside her shop and was in the process of closing.  As she opened

the front door, she saw a black male in the front of the shop, who rushed her and pushed her back in the shop by force, at knife point, and put the knife around her throat and threatened to kill her. She states that when he hit her head against the door or wall, and [dragged] her back to the laundry room of the shop, while still threatening to kill her with the knife at her throat, and made her take off her pants and raped her on the laundry floor by sexually penetrating her and demanding money from her. Ms. McLemore stated that she had reached in her pocketbook and had pulled out a handful of money, mostly one-dollar bills, and gave it to him. She told the officer that he then [dragged] her back up toward the front of the shop and advised her if she called the police he would kill her.

Ms. McLemore states that the black male was wearing a toboggan knit cap. She told the officer that he left the shop on foot and she wasn't sure in what direction he had traveled.

The officer observed a knot on her forehead where he had knocked her against the wall or door, and slight bruises to her right eye where she stated that he had put a knife to her and hit and [dragged] her.

The officer surveyed the area, talked with witnesses. At 156 North Main Street this witness advised that she saw a black male subject running from the Trends beauty shop into the roadway at North Main Street, that he was wearing a dark hooded sweat shirt jacket, and he pulled the hood off and took off a toboggan cap; that he had a low haircut, a large diamond type earring in his right ear, and . . . proceeded to run across North Main Street and down Lafayette Street.

Ms. McLemore did go to the Memphis Rape Crisis Center, and they did take a rape kit, which was later matched against a standard from Mr. Jimmy Lee Taylor [, Jr.]. And when that profile was run, it did match Jimmy Lee Taylor[, Jr.] with regard to the vaginal swab, and the probability of an unrelated individual having the same DNA profile would exceed the current world population.

The trial court explained the terms of the plea agreement and extensively questioned the petitioner before accepting his pleas of guilt:

THE COURT: Under the plea arrangement, for the B felonies the State would recommend the minimum sentence of eight years, to serve thirty percent before eligible for release classification. In Counts 1 and 3 for the A felonies, the State would recommend a slightly enhanced sentence of seventeen years. Both of those are violent offenses and require a hundred percent service.

Is that your understanding of the plea arrangement?

THE PETITIONER: Yes, sir.

THE COURT: So it will be . . . four sentences all run concurrent[ly], or at the same time, for an effective sentence of seventeen years.

The public defender has been representing you while these charges have been pending. Are you satisfied with that representation?

THE PETITIONER: Yes, sir.

THE COURT: [Trial counsel] is one of the attorneys on the staff of the public defender's office. Are you satisfied with his representation?

THE PETITIONER: Yes, sir.

THE COURT: You feel like you've had enough time to meet with an attorney, to discuss these charges and any defense to these charges?

THE PETITIONER: Yes, sir.

THE COURT: You understand that shortly, by your plea, that that's the strongest evidence available against you, and by entering a plea you're waiving the requirement to have witnesses brought in to court to confront and cross-examine. This will result in a conviction for felony offenses. These are the type convictions that can be used against you after today, if you get into some other trouble, to perhaps increase punishment for future trouble.

In addition, two of the offenses require a hundred percent service, they require bail revocation, HIV testing, and the offense in Count 1 requires supervision for life once you're released.

Has anyone forced you into entering these pleas?

THE PETITIONER: No, sir.

THE COURT: Your willingness, then, to enter the pleas is as a result of talks you've had with your attorney and because you're, in fact,

guilty of these offenses; is that correct?

THE PETITIONER:    Yes, sir.

The petitioner pleaded guilty to aggravated rape, aggravated robbery, especially aggravated kidnapping, and especially aggravated burglary. The trial court asked the petitioner if he understood the proceedings at the plea submission hearing, to which the petitioner responded affirmatively. The trial court then accepted the petitioner's guilty pleas and sentenced him pursuant to the terms of the plea agreement to an effective sentence of seventeen years at one hundred percent.

**Post-Conviction Hearing.** At the post-conviction hearing the twenty-year-old petitioner testified that trial counsel talked with him about his case only three or four times, and each meeting lasted approximately thirty minutes. He stated that trial counsel told him that if he tried his case, he could receive a longer sentence than what he had been offered in his plea agreement. He admitted that trial counsel explained his charges, the sentence ranges, and the release eligibility for each sentence. However, he said that trial counsel never filed a motion to suppress the DNA evidence. The petitioner stated that he waived his preliminary hearing because trial counsel felt that it was in his best interests. He admitted that trial counsel discussed possible defenses with him, including the victim's failure to identify him in a lineup and his alibi. He also admitted that he told the trial court that he was satisfied with trial counsel's representation and that trial counsel had spent sufficient time with him to adequately discuss his case. Finally, the petitioner admitted that he heard the trial court state at his guilty plea hearing that he was receiving a sentence of seventeen years at one hundred percent.

Trial counsel testified that he had been with the public defender's office for the last twenty years. He stated that he worked two to three years as a prosecutor in the district attorney's office before becoming a public defender. Trial counsel said that he was initially assigned to the petitioner's case at the general sessions level in February of 2007. He met with the petitioner on February 22, 2007, and they discussed his charges, whether to have a preliminary hearing, the procedure used in the DNA tests, and the results from the DNA tests. Trial counsel said that the petitioner indicated that he understood what a preliminary hearing was at their meeting. He also said that the petitioner claimed that he had been in school the day of the offenses against the victim and that he had an alibi witness named Conseulo Jones. Trial counsel said that he and the petitioner discussed the fact that the DNA report would provide the State with the required probable cause for the preliminary hearing. He stated that he advised the petitioner not to have a preliminary hearing for the following reasons: (1) the inculpatory DNA results provided the required probable cause, (2) the victim would identify him in court, (3) the victim's testimony at the preliminary hearing could be used against him at a later date, (4) it would be difficult for him to show remorse after requesting a preliminary hearing, and (5) the preliminary hearing might ignite the victim's anger and negatively affect a plea agreement with the State. He stated that the petitioner seemed to understand these reasons and agreed to waive the preliminary hearing. Because the petitioner had told counsel that he had been in special education classes in school, trial counsel "was careful to use terms that [he] felt were very clear as far as [their] discussions."

Trial counsel said that the petitioner was represented by a private attorney for a short time. However, after the petitioner's private attorney took a position with the district attorney's office, trial counsel was reappointed to represent the petitioner. He stated that he met with the petitioner again in December or January to go over the discovery that he had received from the State. He stated that he went over the information disclosed by the State in discovery page by page with the petitioner and explained how it would affect his trial. He added that because there was medical evidence and photographs, he "discussed with him how . . . a juror might view that evidence." Trial counsel said that the petitioner voluntarily submitted saliva for a DNA test and submitted a second DNA sample after his arrest. The DNA results established that the petitioner had sexual contact with the victim. Once he explained the DNA results to the petitioner, the petitioner claimed that he and the victim had consensual sex. Trial counsel told the petitioner that he could not pursue both an alibi defense and a consensual sex defense, and the petitioner "indicat[ed] that his initial version of events with regard to alibi were to some degree fictitious." He also questioned the petitioner about his claim that he was in school the day of the offense, since trial counsel believed that the school the petitioner attended had already ended for Christmas break.

Trial counsel stated that he entered into negotiations with the State in an attempt to settle the petitioner's case. He said that he was certain that he and the petitioner talked about the time the petitioner would serve, including the age that the petitioner would be when he was released. Trial counsel told the petitioner that he enjoyed trying cases and that the petitioner would have to decide whether he wanted to accept the plea agreement. He also told the petitioner that he believed the State's offer of seventeen years was a good plea agreement in light of the facts of his case and the charges. The petitioner appeared to understand the consequences of pleading guilty and had no questions at the time he entered his pleas. Trial counsel said that he believed the petitioner would have received a harsher sentence if they had tried the case.

Trial counsel said that he did not file a motion to suppress the DNA evidence because the petitioner "voluntarily submitted . . . the saliva swab." He said that he did not discuss the victim's failure to identify the petitioner during the lineup because the DNA results made the lineup moot. He stated that he tried to negotiate a fifteen-year sentence with the State but because of the circumstances of the offense and the petitioner's prior juvenile record, the State only offered a seventeen-year sentence.

On July 18, 2008, the court entered an order denying the petitioner's request for post-conviction relief. It found that the petitioner failed to prove that he had received ineffective assistance of counsel. It also found that the petitioner understood the consequences of his decision to enter his guilty pleas.

**I. Failure to File a Timely Notice of Appeal.** We must initially address the State's contention that the petitioner failed to file a timely notice of appeal before addressing the petitioner's claim of ineffective assistance of counsel. Tennessee Rule of Appellate Procedure 3(b) provides that a petitioner may appeal "a final judgment in a . . . post-conviction proceeding." Additionally, Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." However, this rule also states that "in all criminal cases the 'notice

of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). This court, in deciding whether to grant a waiver regarding an untimely notice of appeal, "shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996). This court has concluded: "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing Michelle Pierre Hill, 1996 WL 63950, at *1).

Here, the petitioner pleaded guilty to aggravated rape, aggravated robbery, especially aggravated kidnapping, and especially aggravated burglary and was sentenced to an effective sentence of seventeen years on January 28, 2008. The petitioner did not file a direct appeal but filed a timely pro se petition for post-conviction relief. On May 9, 2008, he was appointed counsel, who filed an amended petition for post-conviction relief on the petitioner's behalf on June 9, 2008. On July 18, 2008, the post-conviction court entered an order denying relief. The petitioner's appointed counsel then filed a notice of appeal on August 20, 2008, thirty-two days after entry of the order denying post-conviction relief. As the State notes, the petitioner's attorney failed to file a motion to waive the late filing of the notice of appeal and failed to provide an explanation for his untimely filing. Given that the notice of appeal was untimely by a mere two days, we conclude that the "interest of justice" is best served by granting a waiver in this case. See Tenn. R. App. P. 4(a); see also Crittenden v. State, 978 S.W.2d 929, 932 (Tenn. 1998).

**II. Ineffective Assistance of Counsel.** The petitioner specifically contends that trial counsel was ineffective in failing to explain the consequences of his plea, which prevented him from making an informed decision regarding the State's offer, and in failing to spend adequate time meeting with him. In response, the State argues that this court should affirm the denial of post-conviction relief because the petitioner failed to prove his allegations of ineffective assistance of counsel by clear and convincing evidence.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). Our supreme court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by

clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901, n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242,

89 S. Ct. at 1711. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244, 89 S. Ct. at 1712. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43, 89 S. Ct. at 1712). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligent. Id. These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

Here, the petitioner failed to prove that trial counsel's representation was deficient. See Vaughn, 202 S.W.3d at 116. Specifically, the petitioner failed to show that counsel was ineffective in failing to explain the consequences of his plea and in failing to spend adequate time meeting with him. In addition, the petitioner failed to show that but for trial counsel's mistakes, he would not have pleaded guilty and would have proceeded to trial. See Hill, 474 U.S. at 59, 106 S. Ct. at 370; see also Serrano, 133 S.W.3d at 605. The proof at the post-conviction hearing showed that trial counsel met with the petitioner several times and discussed the offenses, sentence ranges, release eligibility, possible defenses, risks of a trial, and specific terms of his plea agreement. The evidence based on the testimony at the post-conviction hearing and the transcript of the guilty plea hearing indicated that the petitioner understood the consequences of his plea and voluntarily entered his guilty pleas. In addition, trial counsel stressed that he believed the petitioner would have received a harsher sentence if he had tried the case. During the post-conviction hearing, the petitioner acknowledged that at the guilty plea hearing he said he was satisfied with trial counsel's representation. He also admitted that the trial court informed him that he would receive an effective seventeen-year sentence at one hundred percent in exchange for his guilty pleas.

Furthermore, the transcript from the guilty plea hearing undermines all of the petitioner's claims on appeal. The transcript shows that the trial court advised the petitioner of his rights, the sentencing ranges for the offenses, and the specific sentences offered by the State in the plea agreement. The petitioner testified that he understood the charges against him and wished to plead guilty. The trial court then outlined the details of the plea agreement, emphasizing the lengths of each sentence and the fact that the seventeen-year effective sentence would be served at one hundred percent. Finally, the court asked the petitioner several times if he understood the consequences of his plea, and the petitioner responded affirmatively.

At the post-conviction hearing, the court made the following findings of fact:

-8-

Nothing in the record of the plea indicates that the defendant's plea was involuntary. The trial court thoroughly questioned the defendant about his decision to plead guilty and that the defendant was well-aware of his right to proceed to trial and the possible consequences of either action before he pled guilty.

. . . .

At the plea hearing, the petitioner was asked if he was satisfied with his attorney's performance, and he indicated that he was satisfied. . . .

. . . .

The Court finds that Petitioner was adequately informed of the nature and consequences of the plea agreement, and the punishment to be received. His attorney made adequate investigation of the facts.

. . . .

The Court finds that petitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210. The petitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The petitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The petitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

Because the evidence does not preponderate against the findings of fact of the post-conviction court, this court is bound by those findings. We conclude that the petitioner failed to prove by clear and convincing evidence that counsel provided ineffective assistance or that his guilty pleas were involuntary. Accordingly, the petitioner is not entitled to relief on this issue.

**Conclusion.** Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE